397 A.2d 826

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William F. MAUTE, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 15, 1978.

Decided Feb. 9, 1979.

Richard M. Lovenwirth, Pottstown, for appellant.

James A. Cunningham, Assistant District Attorney, Pottstown, for Commonwealth, appellee.

Before PRICE, HESTER and HOFFMAN, JJ.

HESTER, Judge:

Appellant William F. Maute pled guilty in the Court of Common Pleas of Montgomery County to various charges of burglary, theft, criminal conspiracy and corruption of minors. On August 8, 1975, he was sentenced to a term of one to five years imprisonment, seven years probation, and restitution. No appeal was taken. On October 17, 1977, a pro se petition under the Post Conviction Hearing Act (PCHA)[1] was filed alleging, inter alia, the ineffectiveness of counsel and involuntariness of the guilty plea. Counsel was appointed and, following hearings on November 14 and December 5, 1977, relief was denied. This appeal followed.

1. Act of January 25, 1966, P.L. 1580 (19 P.S. § 1180–1 et seq.)

 A PCHA petition is the incorrect procedure by which to challenge the validity of a guilty plea. That issue is more properly presented by a motion filed with the sentencing court requesting leave to withdraw the plea. *Commonwealth v. Dowling*, 482 Pa. 608, 394 A.2d 488 (1978); *Commonwealth v. Lee*, 460 Pa. 324, 333 A.2d 749 (1975); *Commonwealth v. Roberts*, 237 Pa.Super. 336, 352 A.2d 140 (1975). In *Lee*, the court stated: "[W]here the only challenge to the proceedings in the trial court is directed to the validity of the guilty plea itself, the proper procedure is first to file with that court a petition to withdraw the plea." Id., 460 Pa. at 327, 333 A.2d at 750. See also, Pa.R.Crim.P. 321 (eff. Sept. 1, 1977). Subsequent cases have made it clear, however, that if the challenge to the plea is appended to an additional allegation, such as ineffective counsel, then a PCHA petition is a proper procedure by which to bring the matter before the court. *Commonwealth v. Robinson*, 253 Pa.Super. 496, fn. 3, 385 A.2d 448, fn. 3 (Pa. S., 1978); *Commonwealth v. Herold*, 246 Pa.Super. 170, 369 A.2d 866 (1977).[2] Since the appellant coupled his attack on the plea

2. An allegation of ineffective counsel constitutes "extraordinary circumstances" excusing a petitioner's failure to raise the guilty plea issue previously. *Commonwealth v. Holmes*, 468 Pa. 409, 364 A.2d 259 (1976); 19 P.S. § 1180–4(b)(2). The PCHA court, then, is a particularly appropriate forum to hear a contention that counsel was so ineffective as to render the plea involuntary. To hold otherwise would require bifurcated hearings: one for plea withdrawal under *Roberts*, and one for ineffective counsel under the PCHA. The issues in such a case are inseparably linked and judicial economy is best promoted by disposing of the two issues in one, unified proceeding. See *Commonwealth v. Robinson*, 253 Pa.Super. 496, 385 A.2d 448, fn. 3 (1978). This is thus not a case such as we faced in *Commonwealth v. Porter*, 256 Pa.Super. 163, 389 A.2d 651 (1978) where the failure to request leave to withdraw the plea was held to waive Porter's right to challenge his plea in a PCHA court. We noted that Porter had not alleged extraordinary circumstances to vitiate the waiver. 389 A.2d 651, fn. 3. Compare, *Commonwealth v. McKelvey*, 257 Pa.Super. 409, 390 A.2d 1302 (1978).

Finally, it is appropriate to observe that the PCHA judge in the instant case was the same judge who presided at the guilty plea colloquy "thereby satisfying the reason for the *Roberts* rule, which is to permit the judge who accepted the plea an opportunity to review its validity." *Commonwealth v. Schwartz*, 251 Pa.Super. 36, 379 A.2d 319, 321 (1977).

with a contention that his counsel was ineffective, we will consider his arguments. We note additionally that appellant's PCHA counsel is different from his guilty plea counsel, thus properly preserving the issue of the latter's ineffectiveness. See *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975).

■ Where withdrawal of the plea is sought after sentence has been imposed, a showing of prejudice on the order of manifest injustice is required before withdrawal is properly justified. *Commonwealth v. Starr*, 450 Pa. 485, 301 A.2d 592 (1973).

The crux of appellant's argument is that his guilty plea was not knowing and intelligent for two reasons: (1) it was based upon an unconstitutionally obtained confession; and (2) his counsel coerced him into pleading guilty by telling him a plea of not guilty would result in a maximum sentence on each count. We will deal with each prong seriatem.

■ In order to attack his guilty plea on the grounds it was based on an unlawfully obtained confession, appellant must prove *all* of the following: (1) the confession was in fact unlawfully obtained; (2) the confession was the prime motivation of the guilty plea; and (3) the guilty plea was entered on the incompetent advice of counsel. *Commonwealth v. Williams*, 456 Pa. 377, 321 A.2d 608 (1974); *Commonwealth v. Butler*, 454 Pa. 95, 309 A.2d 720 (1973); *Commonwealth v. Marsh*, 440 Pa. 590, 271 A.2d 481 (1970); *Commonwealth v. Reiland*, 241 Pa.Super. 109, 359 A.2d 811 (1976); cf. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Because we conclude appellant has not shown that his confession was in fact involuntary, we do not decide whether the remaining criteria have been satisfied.

■ Appellant testified that the interrogating officer "pushed me around and at one point in his little game, he threatened to shoot me." In addition, the officer "slapped me around, pulling my hair, pushed me into the chair, pushed me into the table a couple times." PCHA Trans.

11/14/77, pp. 16–17. Further, the officer told appellant that if he confessed, he (the officer) would see to it that appellant would ɒe released from jail ROR. Id., p. 15. Under such a coercive atmosphere, appellant confessed.

Officer Smith, of the Lower Frederick Township Police Department, denied there was any physical contact with appellant when the statements were taken. In fact, the first few statements were volunteered by appellant when he was not even under arrest. Id., p. 41. Although he was "instrumental" in getting an ROR bond for appellant, Smith denied he promised such a bond as an inducement for the confessions. Id., pp. 44, 47. Chief Rupp, of the Marlborough Township Police Department, was present during the confessions and confirmed there was no physical violence and that appellant had in fact volunteered to come to the police station "for the purpose of being questioned . . . He [appellant] wasn't threatened in any way that if he didn't show up that we were going to do anything to him." Id., p. 37.

The lower court, which heard the testimony and could assess credibility, resolved the factual discrepancies against appellant. *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1977); *Commonwealth v. Williams*, 476 Pa. 344, 382 A.2d 1202 (1978). Our review of the record convinces us appellant's will was not overborne and that he possessed the ability to understand what he was doing when he confessed. See *Commonwealth v. Melton*, 465 Pa. 529, 351 A.2d 221 (1976); *Commonwealth v. Velez*, 455 Pa. 434, 317 A.2d 252 (1974).

██ Appellant also avers that his counsel coerced him into pleading guilty by assuring him that he (appellant) would receive a maximum sentence on each count were he to plead not guilty. Basically, the dispute was whether counsel told appellant he *would*, or whether he told appellant he *could* receive the maximum if he pled not guilty. Counsel testified he told appellant the latter. PCHA trans. 12/5/77, p. 35. Moreover, during the lengthy plea colloquy (43 pages), appellant was advised as to the permissible range of sen-

tences on his various charges. Colloquy, pp. 22–23. Based upon this record, we agree with the lower court that appellant was not misled as to the possible sentences.

We turn to the final issue in this appeal wherein appellant claims it was error for the PCHA court to exclude testimony relating to the "cruel and inhuman treatment" he has received while in prison. We note that such a ground for post-verdict relief is not included in the list chronicled in Sec. 3 of the Post Conviction Hearing Act (19 P.S. §§ 1180–3(c)(1)–(13)). A claim of "cruel and unusual punishment" is more properly cognizable in a petition for habeas corpus. See *Commonwealth ex rel. Bryant v. Hendrick*, 444 Pa. 83, 280 A.2d 110 (1971); *Commonwealth ex rel. Thompson v. Day*, 182 Pa.Super. 644, 128 A.2d 133 (1956). Such common law writs as habeas corpus and coram nobis have not, of course, been abrogated by the PCHA but have been supplanted thereby, and all claims previously cognizable by the writs, in terms not covered by the PCHA, may still be litigated by these common law actions. *Commonwealth v. Sheehan*, 446 Pa. 35, 285 A.2d 465 (1971); *Commonwealth v. Runkle*, 250 Pa.Super. 130, 378 A.2d 488 (1977); *Commonwealth ex rel. Wardrop v. Warden*, 237 Pa.Super. 502, 352 A.2d 88 (1975). See 19 P.S. §§ 1180–2. Accordingly, we will treat this portion of appellant's PCHA petition as a properly filed writ of habeas corpus.[3] *Sheehan*, supra; *Commonwealth v. Tinson*, 433 Pa. 328, 249 A.2d 549 (1969).

It is unclear from this record whether appellant seeks by his writ discharge from custody or merely transfer of prisons. Although his PCHA petition requests discharge, most of the pertinent testimony at the hearing was directed to beatings appellant has suffered in prison at the hands of fellow inmates and his request that he be imprisoned else-

3. A prisoner's privilege to the "Great Writ" is found in Art. I, Sec. 14 of the Pa. Constitution. See also, 12 P.S. §§ 1871 et seq. The concomitant federal privilege is in Art. I, Sec. 9 of the United States Constitution.

where.[4] Whatever relief he seeks, we hold the bringing of this writ was premature since appellant has failed to exhaust his administrative remedies.

The supervision and control of the state correctional institutions are discretionary matters resting with the Bureau of Corrections which is, in turn, part of the Department of Justice. Act of April 9, 1929, P.L. 177, art. IX, added, July 29, 1953, P.L. 1428, as amended Dec. 22, 1965, P.L. 1215; July 16, 1968, P.L. 350, No. 172 (71 P.S. §§ 301, 302). The Deputy Commissioner of Correction has sole responsibility for assigning and transferring prisoners from one institution to another. 71 P.S. § 303; 61 P.S. § 72. The court has no authority to order transferal. *In Re Peiffer's Petition*, 193 Pa.Super. 476, 166 A.2d 325 (1960). Moreover, pursuant to Sec. 916 of the Administrative Code of 1929 (71 P.S. § 306), the Commissioner of Correction has promulgated rules and prosecution procedures to be followed in the event an inmate is aggrieved by the action of another inmate. See 37 Pa.Code § 95.1 et seq. These regulations set forth the inmate's right to complain directly, verbally or in writing, to any employee of the prison or the Bureau (§ 95.8), and his right to communicate with the district attorney should the State Police or prison authorities determine, after due investigation, that no prosecution is warranted. (§ 95.11). The policy of the Bureau is thus to maintain law and order within its jurisdiction and not to "condone violations of the . . . Penal Code." (§ 95.1).

 "[H]abeas corpus should not be entertained . . to correct prison conditions which can be remedied through an appeal to prison authorities or to an administrative

---

4. There is no question that appellant was in fact severely beaten in the Montgomery County Jail. His attackers were apparently those he implicated in the various crimes to which he had already pled guilty. As the lower court observed: "The entire thrust of [appellant's] conduct, from the confessions, the release from the county jail on his own recognizance to the instant proceedings was to avoid serving in a prison wherein he would be subject to attack by those he implicated." Opinion at 7. At the time of the PCHA hearings, appellant was incarcerated at the State Correctional Institution at Dallas, where he also fears for his safety.

agency." *Hendrick*, supra, 444 Pa. at 90, 280 A.2d at 113. Habeas Corpus is thus an extraordinary remedy and is available after other remedies have been exhausted or are ineffectual or nonexistent. *Moore v. Roth*, 231 Pa.Super. 464, 331 A.2d 509 (1974); *Commonwealth ex rel. Lindsley v. Robinson*, 30 Pa.Cmwlth. 96, 372 A.2d 1258 (1977).

In view of the administrative procedures still available to appellant to redress his grievances, and the absence of any showing he has attempted to pursue these avenues, the PCHA court was correct in refusing evidence bearing on prison conditions.

Order affirmed.